Case No. 18-6187 and 18-6190, Jack Slinger v. The PendaForm Company Argument not to exceed 15 minutes per side. Mr. Welborn, you may proceed. Please, the court. I'm Joe Welborn here on behalf of the plaintiff below, Jack Slinger, the appellant here. If I can reserve three minutes for rebuttal. You may. Thank you, counsel. The plaintiff's argument here is pretty simple. This is a contract case. In order to decide the contract case, the question has to be answered, did Mr. Slinger breach the contract? If he didn't breach the contract, he gets his severance for one year. And what the trial court did below was decide, based upon the defendant's belief, that summary judgment was appropriate. So I read that in your brief. The one thing I think everyone, part of the problem with this case below, it seems to me, and still do a little bit, is the way the complaint was framed. And I know you talk about this in your brief. But it called breach of contract, basically, I can't remember the exact language, by pretext or something like that. Is there such a claim? I went and read the Coke case. But is there such a claim in Wisconsin law? Or is it just a pure breach of contract case? It's a pure breach of contract. And this isn't an excuse for why it was pled that way. And I completely understand the confusion. I got in the case after the pleadings had closed. And that's the way that it had the pretext. But I do not, we look for case law that said, is there a pretextual breach of contract? I don't think it exists. My understanding of pretext, I think it comes up mostly in employment cases. I don't work under traditional employment cases. So I agree with you, but how do you deal with Coke then? Well, Coke is actually a pretty good example. Because what they addressed first in there was the breach of contract claim. And unlike in this case, there was a limitation on the determination of what constituted a breach. Because in that case, it said, if it was found by the company to be a breach, then there could be a termination. In the contract language. Here, there's no limitation like that. And Hale had a similar limitation, right? Excuse me? The Hale case? That case. That was a high law case. I think it had a similar limitation. So your point is, those were still breach of contract cases. They just created provisions where the subjective belief was relevant. Whereas here, it's a pure objective inquiry. That's right. That's right. In fact, the Hale court said it stands for that case that an employment contract may limit the inquiry to whether the employer honestly believed that calls existed for termination. That is nowhere to be found in this contract. Nowhere to be found. What about the fact that there's an at-will provision? Could they have just fired him for any reason? Could not. He's got an employment contract for a definite period of time. And it has specified reasons for termination for calls. There's an at-will provision in there. And it says irrespective of the other terms or something to that effect. But it also has a provision, Your Honor, that if they do that and it's not for calls, he's entitled to severance. And quite frankly, they acknowledge that in their briefing below, I believe. I mean, it says notwithstanding anything in the agreement to the contrary. So that provision seems to be first among equals to me, the at-will. And if you're at-will, you can be fired for any reason. And that is the ultimate obligation, I guess, or controlling aspect of the agreement. So why doesn't that, I think, have been written differently. I agree. But given the way it's written, suppose they had not given any reason. Suppose they just terminated someone. They didn't give any reason for it. Your Honor, I still think it triggers. You've got to read the contract as a whole and in context. They could, I mean, they can fire him as long as it's not in violation of the law. Fire him for any reason, I think. But if they do that, it also triggers their obligation for severance if it is without cause. Well, suppose they, I mean, it depends how you read these together, which is the point of the questions. But suppose they gave no reason. I mean, here we're disputing there's a reason and was that a valid reason under the cause for cause termination. But suppose they just said you're fired. I think that triggers the without cause termination provision that allows him to be paid severance. Why is that? Why does it trigger without cause versus they just, they haven't stated why it's for cause, but they haven't stated any reason. So why does it trigger either of those as opposed to just the at-will provision that says this trumps, you can be fired for any reason and this controls over anything that's conflicting? Well, that, I don't, and I'd have to go back and study that provision again. But it also, even though they can fire him for any reason, that provision I don't think says you can fire him with no consequences. Well, it just says notwithstanding anything in the agreement to the contrary. So if they gave no reason, then you're saying the default is that's a? Termination without cause. Why, what in the contract says it defaults there? Well, I don't think you can read the, out of the contract, other provisions. I mean, I understand the notwithstanding, the notwithstanding other language that they can fire him for any reason, but also there's other language in the contract that says if you fire him for any reasons other than these specified reasons, you owe severance. So to the extent there's some conflict, I don't think you can read that out. They can fire him for any reason, but there are consequences to that. And I don't, I'd have to go, to be honest with you, I hadn't looked and focused on that provision for this argument. Your friend didn't. Yeah, they didn't raise this, so it doesn't matter. But in any event, they did fire him for cause, right? Their allegation is they fired him because he was soliciting, at first it was whatever, the gross misconduct, but it ultimately was that he was soliciting people under the solicitation provision. That's what they claim, and that's the question that has to be answered. If that answer is no, he wasn't soliciting, because the whole case is based upon six words, don't be the last man standing, that's it. Does your client, I'm just curious, because I thought he said he didn't remember saying those, does he still maintain that? Because I thought there were a bunch of people that said he did say it. There were four or five, there's a number of people, but those people also said the manner in which he said it was very lighthearted, very, you know. No, I understand what it means to be a factual question, but my point is still, there is a number of people that said he said it, correct? And he did not deny that he said it, he just did not remember that he said it. And, you know, the word solicitation, under the plain meaning of that word, it requires active persuasion and intent to bring about a result. That just does not fit those words, particularly in the context here. And also in the context. Wasn't that ultimately a factual question as to what he meant and what the context was and all those things? I think so. At minimum, it is a factual dispute that needs to be decided by the trial. In fact, in this case it would be the trial judge because it's a bench trial. But that's, at minimum, there's a factual dispute here because the employees that said he said that, that comes from an affidavit that was stuck in front of them by their lawyer and their CEO or president. Weeks after this occurred, you know, and they're in the midst of a big change. So you contrast that with what they said in their deposition when we deposed them. And just about all of them said Mr. Slinger didn't encourage us to leave. We didn't take it that way. We didn't, you know, it was very lighthearted. They were asking him questions about what the status of things. He was trying to reassure them about the fact that he didn't know of any further facilities that would be closed. So those words in the plain meaning were just not a solicitation. And particularly if you look in the contract where they are, they're in the midst of an anti-competitive provision of an employment contract. And those are typical that you have non-compete, non-confidentiality, and non-solicit. He didn't have anybody to solicit for or anything to offer these people. So, you know, that's just under the common meaning. In your brief you have a footnote that at least raises a question about the enforceability of the non-compete under state law. That was an issue. That issue was not really litigated below. It was not. We didn't get to that issue. You know, I think that's a question because, you know, just the breadth here that, you know, any, maybe. It's not a question you really litigated below. And it's not a question that's really raised in the briefs here other than I think your footnote. We did raise that in the footnote. You know, it's questionable whether it's enforceable or not. But that wasn't the basis of the summary judgment. The basis of the summary judgment is it's very straightforward. It's what they believed. By putting it in a footnote, it's not even properly before us, correct? Right. They raised the question as to whether or not we waived. And I want to touch on this real briefly. Waived this issue. And at the same time they acknowledged we raised the argument that this was a breach of contract in our briefing below. And so I don't know how it could be conceived that we waived the issue, that the court had to decide was there a breach by Mr. Slinger. You got a block quoted in your brief. That's pretty clear. But I'll ask the other side. I'm curious. And I'll also point out, I know I've just got a few minutes, but if you look at their summary judgment briefing, this is not in our briefing here, but they're all throughout that briefing. In their summary judgment motion, in their summary judgment brief, and in their reply brief. I've gone back and looked at it since we filed our brief. And I can give page citations to these if you'd like, but they say this is a contract case. And I'm only reading a few of these things. And this one is particularly good. They say Slinger's receipt of payment of any severance benefits under his contract depend upon whether Slinger's behavior during the term of the contract constituted a breach or violation of the contract. So the issue was before the trial court. We raised it. They raised it. The trial court did not decide that issue. In their reply brief, they again say this is a contract case. And they say the contract in this case is unambiguous. It is not ambiguous. They say the contract says Slinger cannot solicit people to quit. This court should decide this case using the plain language of the contract and the clear import of Slinger's actions. And they said in there, motive is irrelevant in contract law. Their belief, unless the contract allows it, is irrelevant in this case. And the trial court improperly decided it, the case we submit, based upon that belief. Thank you. Thank you, counsel. Judge Merrick, did you have any questions for? No, no questions. Okay, thank you. May it please the court, I'm Sam Blue of the Nashville Bar. With me today is Mr. David Kruger, the president of the company. Let me start at the end. The facts in this case really aren't in dispute at all. What happened here is that Mr. Slinger, on February 23, 2017, decided that he wanted to go to the new Concord facility, and the company agreed and even paid for his plane ticket. He went to the new Concord facility, and according to the testimony of five witnesses, each of whom testified by both affidavit and deposition, Mr. Slinger told each of them, don't be the last man standing. Now, we submit that's subject to only one interpretation, but I'll come back to that in a moment. Don't we have to view that in the light most favorable to the plaintiff? And I believe if you do view that in the light most favorable to the plaintiff, it has only one meaning. A solicitation? Of encouraging the employee to resign. Solicitation, as my friend indicated, solicitation could apply to encouraging an employee to leave the company and come to work at my new company. This contract provision does not say that. But it seems awful difficult for us to now decide that, especially in the current posture it's in, where I do agree with your friend, what he said in his brief, that there does seem to be some subjective inquiry going on here. And it seems to me, ultimately, when viewing the evidence in the light most favorable to the plaintiff, why isn't that just a factual question as to what that means? Because, Your Honor, this court has stated in Norfolk Southern Railway v. Allied Erecting 2019, an opinion joined by Judge Redler, that if the That's pretty impressive. I only had a couple. You're on the ball. We try. We try, Your Honor. We try. In that case, in an opinion joined by Judge Redler, the court taught us that even if the lower court did not specifically pass judgment on an issue, the court of appeals may do so where the issue is presented with sufficient clarity and completeness and its resolution will advance the progress of the litigation. We can affirm for any reason on the record that's well established. But that doesn't answer the question of why we should interpret this statement essentially in your favor. Because, in the first place, as my friend indicated, if the employer's motivation is irrelevant, so is the employee's. What matters is the action that was taken. And the action that was taken was to tell these individuals, don't be the last man standing. Witness Hoffler testified. One way to take it was this place wouldn't be around and they're not going to keep the employees here. It didn't make me feel good. Are you still standing by this pretext analysis, the way that it was sort of formulated below? I'm standing by the pretext analysis only to the extent that that is the manner in which the complaint was pled, that is the manner in which the plaintiff argued at the summary judgment phase, and that is how the district court viewed the case as being presented. I think there's two ways to look at pretext. One is in the legal fashion. And the other is just the reason they gave is pretextual for the real reason they fired me, which is they didn't want to pay me severance. And so that's the breach of contract, that this whole made-up stuff is just made up. And to the extent they rely upon the notion that this stuff is just made up, they lose because it's not made up. The facts are he did go say that and he says, I don't remember, and at deposition – No, I agree with you that we have to accept that he said it because there's no evidence to the contrary. But the point still is what it means. And that, to me, you have to view in the light most favorable to him. And then the question is, viewing it as such, is it solicitation? And if I may, Your Honor. Go ahead. Witness White testified, Slinger came to tell me don't be the last man standing, which I understood to mean the thoughts we had about the company was going to close could happen a lot faster than we thought and reaffirmed my feeling I needed to find another job, ECF 41-3. Oliver, Slinger was walking through the big room on February 23 telling everyone not to be the last man standing, including White, Walcott, Mailer, Jeffries, Ron Smith. He told us not to be the last man standing. Really, take care of yourself, which Oliver interpreted as we were all going to be let go, so we needed to start looking for other work. The more prototypical solicitation case is that you're telling someone to leave someplace to go specifically to somewhere else and usually you're affiliated with the other place, so it will benefit you. Yes, Your Honor. Those elements seem to be lacking here. Those elements do not matter in this case because the way the contract is written, it says, and I have the contract language here before me, Section 7D, executive will not directly or indirectly at any time during the period of executive's employment attempt to disrupt, damage, impair, or interfere with the company's business by raiding any of the company's employees, which is what you're talking about, or soliciting any of them to resign from their employment by the company. So if the boss walks down the hall and says, you know, Sue, you know, I've got to tell you, people here don't, you know, just to be honest with you, people don't think you're really cutting it. You might want to look for another job. Under your theory, that's a solicitation because you're encouraging them to leave the company, albeit for the reason you think that they're just not cutting it and you're just giving them a heads up before they get a really bad evaluation. That's a solicitation? With respect, Your Honor, I submit that is a distinctly different situation, but the answer is yes. Under the exact language of this contract. When can the company tell someone to leave? They can fire them, which is pretty directly telling them to leave, but if they violate their own solicitation agreement. But the company may decide, as this contract permits them to, that they're not going to fire someone for that reason because they conclude that it's not. I don't know how to get rid of their employees. But let's say law firms every year meet with their associates and they kind of give them an indication if they're going to make partner. And a lot of them will say, look, I want to think about looking elsewhere. If a partner uses that language and this agreement is in place, or a lawyer uses this language, they've solicited? Yes. Because that's exactly what the language says. They have encouraged the individual to go find another job. When you tell an associate attorney, as I've done, hey, dude, you're not going to make partner. The clear message, the unmistakable message, the message every associate understands that's got any sense at all, is you need to go find another place to work because you're not going to be here all that much longer. So if the law firm, if the partnership said, hey, you were way out of line. You had no authority to tell that associate that. You had no authority to discourage that associate. We think she's a really good associate. Then the partnership, if this language existed, could in fact tell that lawyer, you're terminated. On that example, Your Honor, I think under those circumstances, this language would clearly permit the law firm to terminate the individual. No question about it. I'm familiar with partnership agreements. It tells me there's always lots of reasons you can get rid of partners. Yes. But, yes. And the more common case would be, hey, I'm leaving to go to the firm down the street. Why don't you come with me? Yes. So, and I just asked about the pretext because I could, if there was a factual question about whether the company really believed that Slinger was soliciting, they in their minds may have formed that view. There may be no dispute about what was in their mind, but for contractual analysis, and I realize the case was pled sort of in an odd way, but for contractual analysis, we really have to look at what the actual facts are. Was he actually soliciting? In that sense, in my mind, this pretext thing kind of falls away, and we just have to look. It doesn't really matter what they thought he was doing. It matters what they thought he was doing only to the extent that that actually informs what the actual facts were. We have to look at the actual facts, and I think Judge Tappara said a couple of times, it just seems like the record is sort of disputed there. I disagree with the notion that the record is disputed there. I do agree with your comments about the nature of pretext. What has happened over the course of the last 40 years is that a pure contractual relationship, all employment relationships are contractual in nature. When Title VII was first enacted, the only remedies permitted were back pay and attorney's fees, which was a pure contract form of remedy. With the Civil Rights Act of 1991, when Congress added compensatory and punitive damages subject to caps, Congress, in effect, attached tort remedies onto what previous to that had been a pure contractual analysis. Prior to that, in McDonnell-Douglas v. Green, the United States Supreme Court gave us the burden-shifting analysis, legitimate non-discriminatory reason, Title VII analysis, which now has sort of morphed and taken over the whole world of employment law, and I respectfully submit what probably happened when this complaint was pled is that's how the attorney was thinking. My friend was not in the case at that time. I just submit that's what happened. I'm not disagreeing with you that that is not a pure contract analysis. That is how the case was pled. It was how it was argued by the plaintiff, and as the district court noted in a footnote, that is how the district court analyzed the case. With respect to the four-cause termination provision, you only really need one four-cause reason. You could get five reasons, four of which don't pan out, but so long as one of those satisfies the four-cause purpose, you can be terminated. I think that would satisfy the contract. But am I right that the only one you're relying on here is the non-compete aspect, right? No, sir, not the non-compete aspect. I don't want us to get confused about some non-compete's enforceability or unenforceability. Non-compete has nothing to do with this. The question is, did he encourage employees to resign their non-solicitation? Non-solicitation. Non-solicitation, yes. And that's the only ground. And not non-solicitation in the sense of quit and come with me, but non-solicitation in the sense of just quit and go find another job. I just want to make it clear, that's the only clause, that's the only argument you have for why it was paused. That is correct, Your Honor. Not another one. That is correct, Your Honor. Again, the testimony of the individuals which I've started to recite, they all say basically the same thing. And again, Slinger admits in his affidavit and his deposition that he doesn't recall one way or the other. If other people say he said it, he's not able to challenge that proposition. He concedes that. There's no issue about that. So I respectfully submit to the court that, again, the statement, don't be the last man standing, it is inconceivable to me how anyone could actually subjectively interpret that to mean anything other than you need to get out of here. Or using an objective standard, I respectfully submit that the court can and should conclude that as an objective matter, there simply is no other way to interpret the term, don't be the last man standing, especially when it is repeated over and over to each of these individuals individually one-on-one. This is not some one-off comment that he makes while he's standing in front of 15 people. This is a statement. Oliver testifies. He was walking through the facility, talking to the people one at a time, and he told them all, don't be the last man standing. This is a big room with cubes. They can hear each other. They testify, they can hear each other. So didn't they, and I haven't gone back and looked at the depositions, but is your friend right that they testified that Slinger never encouraged or solicited them to leave their employment? There is evidence to that effect from one or two witnesses. Yes, Your Honor. There is also evidence from other witnesses to the contrary. So why isn't that a factual inquiry? Because I don't believe the reaction of the individual is any more relevant than the intent of the speaker. But it could help us understand what the words meant. I cannot disagree with that, Your Honor. Okay. Anything further? I think not, Your Honor. Judge Merritt, do you have any questions? No. Okay. Thank you, counsel. Counsel, can you address, your friend has a nice argument that this provision, non-soliciting, because I have to confess I was thinking of it the same way Judge Radler talked about, which is solicitation in the ordinary sense. But there is this or soliciting any of them to resign from their employment by the company and then don't be the last man standing. I think a reasonable interpretation of that is resign. Get out of here before they fire you. Why is that not a solicitation? I think you have to look at, one thing I will say, I think you have to look at the context in which that provision exists. It's in the anti-competitive provision. But I'm not trying to limit it here. You know, I've probably been guilty of things that the court raised here. Let me put it in context. My first firm I was with, I can imagine a day when I was there for a few years where I got so frustrated that I could have walked down the hall and said, you know, this place stinks, let's all get out of here. Under their interpretation of that provision, I solicited people to leave. And we've cited case law that says those type of statements, those innocuous statements do not amount to solicitation. Years later when I was there, a great firm I was with, but I went to one of my senior partners. But is that solicitation in the traditional sense, which then I would agree with you, or this really broad soliciting any of them to resign from their employment? I don't think solicitation by definition requires that you actively persuade somebody or try to get somebody to do something. An innocuous comment like what Mr. Schlinger said or the example I gave of walking down the hall, that's not by definition solicitation. Yes, to me a lot of this turns on what solicit means. Is it encouragement? Is it direction? Is it a suggestion? What's the best Wisconsin state case to define? Well, we cited because there's not a lot of Wisconsin case law. But Wisconsin case law says if there's not anything that defines that, go to the dictionary. And we put in – let me see here. That's right. My recollection is there wasn't a lot of case law, but I wanted to – We put in Black's Law Dictionary. We put in I think about every dictionary that there is. But you couldn't find a state case discussing it? We could not. We did find – at least I don't think. I'd have to make sure of that. But I know we rely heavily upon the dictionary definition. And that dictionary definition does not include what we're talking about here. I was using an example that I – I'm not going to get to that example because I've got five seconds. But all the facts that Mr. Blue was talking about, that's for a trial. Because a lot of people said we did not solicit. They said we didn't even think twice about this. It was no big deal. That's a factual issue, which we never got to. Thank you. Thank you very much, counsel. The case will be submitted. Thank you both for your thoughtful and engaging arguments. We appreciate it.